IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ABDUL LOVE, #M10108, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 25-cv-00380-SMY |
| | ) |
| CHRISTINE BROWN, PERCY MYERS, | ) |
| ANGELA LANKFORD, | ) |
| LATOYA HUGHES, JEREMY BONNETT, | ) |
| CLAYTON STEPHENSON, | ) |
| CHRISTY CROW, JEFFREY SADDLER, | ) |
| DAVID MITCHELL, JOHN BARWICK, | ) |
| LIVELY, | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| SOUTHERN ILLINOIS HEALTH, | ) |
| JANE DOE (Nurse, SIH), and | ) |
| JOHN DOE (Doctor, Gastroenterology), | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Abdul Love, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pinckneyville Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims defendants delayed and denied treatment for his serious medical conditions and seeks monetary damages and injunctive relief.

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

1

**The Complaint**

Plaintiff makes the following allegations in the Complaint (Doc. 1): While Plaintiff was in the custody of the Lake County Jail for a post-conviction hearing in January 2023, he discovered a painful growth on the right side of his face (Doc. 1, p. 7). Medical providers diagnosed him with an infected salivary gland. An ear/nose/throat ("ENT") specialist ordered a CT scan due to Plaintiff's history of Crohn's disease and the medication (Entyvio) he took for that condition, as well as Plaintiff's family history of cancer (Doc. 1, p. 8). The CT scan revealed a tumor on Plaintiff's right parotid gland as well as a nodule on his left thyroid. He had a biopsy on the parotid gland tumor and was scheduled to have the tumor surgically removed on August 2, 2023 (Doc. 1, pp. 8-9). However, the surgery was not done because Plaintiff was transferred back to IDOC custody on July 21, 2023.

Upon Plaintiff's arrival at Pinckneyville on August 2, 2023, he told medical staff about the scheduled surgery and his Entyvio infusion that was set for July 26, 2023, neither of which had been performed. Pinckneyville staff told him that because the Lake County medical providers were not part of Wexford Health Sources, Inc., a Wexford provider must restart his Crohn's medication and determine whether to approve surgery to remove the tumors (Doc. 1, pp. 9-10). A Pinckneyville physician's assistant submitted a referral on August 8, 2023 for Plaintiff to see an off-site gastroenterologist for his Crohn's and an ENT specialist for the thyroid and parotid tumors.

Plaintiff saw Defendant John Doe (gastroenterologist) regarding his Crohn's treatment and Defendant Jane Doe (gastroentero/gastrointestinal physician's assistant) about the tumors, on August 28, 2023.[1] Jane Doe told Plaintiff that the formation of tumors and cancer are known side effects of Entyvio. John Doe decided Plaintiff should not re-start Entyvio or any other related

---

[1] Plaintiff alleges that John Doe and Jane Doe are employed by Southern Illinois Health ("SIH") and that SIH is a subcontractor of Wexford that provides off-site medical care for Pinckneyville prisoners (Doc. 1, pp. 6-7).

2

medication for Crohn's until a thyroid biopsy was performed (Doc. 1, p. 11).

Plaintiff wrote to Defendant Acting Warden Crow on September 29, 2023, seeking help to get medical care because Defendants Myers (Pinckneyville Medical Director) and Brown (Health Care Unit Administrator) were unresponsive to his requests (Doc. 1, pp. 11, 38-39). His parotid tumor had doubled in size in the previous two months and his pain had increased (Doc. 1, p. 38). Crow did not respond. Plaintiff underwent a parotidectomy on December 8, 2023 to remove the tumor from his salivary gland (Doc. 1, p. 12). No biopsy was performed on his thyroid.

Plaintiff returned to see Defendants John Doe and Jane Doe on March 14, 2024. He told Jane Doe that for the past seven weeks, he had been having multiple daily bloody bowel movements and diarrhea, stomach cramps, and rectal burning, indicating his Crohn's disease was no longer in remission. He also notified her the thyroid biopsy had not been done and asked her to have the John Doe Doctor put in an order to expedite that biopsy. They gave Plaintiff an order to return to see John Doe in three to six months (Doc. 1, pp. 12-13).

On approximately April 1, 2024, Plaintiff was sent to Barnes Jewish Hospital for an ultrasound on his thyroid. The doctor there opined that the tumor did not appear to be cancerous. Plaintiff questioned why he had not been given a biopsy. Plaintiff had a second ultrasound at the Pinckneyville HCU on April 8, 2024, which resulted in the provider recommending a thyroid biopsy (Doc. 1, pp. 13-14).

Plaintiff spoke with Defendant Brown at the HCU on approximately May 7, 2024. He told her about his Crohn's disease flare-up that had been going on since February or March 2024, and that he could not re-start his Entyvio medication until he had a thyroid biopsy. He showed Brown the report from his Lake County doctor that included an order for the thyroid biopsy. Brown responded, "as long as there is a single breath in my body you will never get treatment for Crohn's

disease or anything else." (Doc. 1, p. 14).

Plaintiff wrote to Defendant Warden Barwick on June 19, 2024, informing him of Brown's statement, the nearly one-year delay in obtaining the thyroid biopsy, his worsening Crohn's symptoms, and requesting Barwick to address the matter with Defendants Myers and Brown (Doc. 1, pp. 14-15, 41-42). Barwick never responded. Plaintiff sent similar letters to Defendant Hughes (IDOC Director) on July 6, 2024, and to Defendant ADA Coordinator Lankford on July 10, 2024, but neither responded (Doc. 1, pp. 15-16, 44-45, 47).

On or about August 13, 2024, Plaintiff returned to the office of Dr. John Doe and P.A. Jane Doe (Doc. 1, p. 16). He again told Jane Doe that his severe Crohn's symptoms were continuing, he had not received any medication to treat the Crohn's symptoms for over one year, and the thyroid biopsy had not been done. He demanded that Jane Doe or John Doe order the thyroid biopsy. Jane Doe told Plaintiff that he would return to Pinckneyville with an order for the thyroid biopsy in his treatment plan (Doc. 1, p. 17).

Upon returning to Pinckneyville, Plaintiff met with Defendant Myers regarding his Crohn's treatment plan. Myers said the plan was for Plaintiff to continue his Crohn's disease medication and return to see John Doe in six months. Myers noted Plaintiff was not on any Crohn's medication. Plaintiff confirmed he had not received any medication for the condition for over a year and had been experiencing bloody bowel movements, rectal burning, stomach cramps, and diarrhea for about six months. He asked Myers what his treatment plan would be in light of John Doe's failure to do anything for approximately a year (Doc. 1, pp. 17-18). Myers said he would confer with John Doe on a treatment plan. Plaintiff told Myers he wanted to lodge a formal complaint with Wexford and Defendant Southern Illinois Health ("SIH") over the failure of John Doe and Jane Doe to treat his Crohn's disease treatment. Myers said he would inform Wexford

and SIH about his concerns and Plaintiff would be contacted by representatives of those entities. Plaintiff received no such contact. Neither Myers nor John Doe ever made a treatment plan for Plaintiff (Doc. 1, p. 18).

Plaintiff had another ultrasound of his thyroid in February 2025 after complaining of painful swallowing and trouble breathing and turning his head (Doc. 1, p. 26). That test showed that his thyroid tumor had more than doubled in size in the past year.

Defendants Bonnett, Stephenson, Saddler, Lively, Mitchell, and Barwick reviewed Plaintiff's detailed grievances over the lack of treatment for his Crohn's disease and delayed thyroid biopsy but did nothing to help him obtain treatment (Doc. 1, pp. 22, 25-26). Defendant Brown prevented Plaintiff from obtaining medical treatment in retaliation for grievances and complaints he had lodged against her over several years (Doc. 1, pp. 26-30). Plaintiff asserts a civil conspiracy claim pursuant to 42 U.S.C. § 1985(3) and § 1986 against Brown, Wexford, SIH, Lively, Barwick, Bonnett, and Hughes (Doc. 1, pp. 30-34).

In addition to monetary damages, Plaintiff seeks preliminary and permanent injunctions requiring defendants to immediately provide him with a thyroid biopsy and Crohn's disease medication, as well as other medical treatment (Doc. 1, pp. 34-35).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1: Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Myers, Jane Doe, John Doe, Brown, Crow, Lankford, Barwick, Hughes, Bonnett, Stephenson, Saddler, Lively, and Mitchell for failing to provide treatment for Plaintiff's severe and painful Crohn's disease symptoms beginning on August 2, 2023.

Count 2: Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Myers, Jane Doe, John Doe, Brown, Crow, Lankford, Barwick, Hughes, Bonnett, Stephenson, Saddler,

|         |                                                                                                                                                                                                                       |
|---------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|         | Lively, and Mitchell for failing to provide a biopsy or treatment for Plaintiff's thyroid tumor beginning on August 2, 2023.                                                                                          |
| Count 3: | First Amendment retaliation claim against Brown for denying and/or interfering with Plaintiff's medical treatment because he filed grievances and complaints against her.                                          |
| Count 4: | Civil conspiracy claim against Brown, Wexford, Southern Illinois Health, Lively, Barwick, Bonnett, and Hughes for colluding to prevent Plaintiff from obtaining medical treatment for his Crohn's disease and thyroid tumor. |

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Discussion

### Counts 1 and 2

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* An objectively serious condition includes a condition that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

6

The allegations in the Complaint are sufficient for Plaintiff to proceed on the deliberate indifference claims in Counts 1 and 2 against medical professionals Myers, Jane Doe, John Doe, and Brown.[2]  While Wardens Crow and Barwick and IDOC Director Hughes are not medical providers, Plaintiff alleges he contacted each of them directly, explaining his serious medical conditions and his inability to obtain care from the medical providers.  Where a plaintiff informs prison officials that he is being denied access to health care, those officials may be liable under 42 U.S.C. § 1983 for their inaction.  *See Perez*, 792 F.3d 768, 781 (7th Cir. 2015); *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008).  Counts 1 and 2 may also proceed against Crow, Barwick, and Hughes.

However, ADA Coordinator Lankford will be dismissed from the case. Plaintiff communicated with her as well, but he fails to allege any facts indicating that he qualifies as an individual with a disability requiring accommodation or that Lankford had any responsibility to obtain medical care for him.

Plaintiff asserts Pinckneyville grievance officers Saddler and Lively, Warden Mitchell, and ARB officials Stephenson and Bonnett should be liable for failing to take action to obtain medical care for him after reviewing his grievances.  With respect to each of the three grievances Plaintiff included, these officials relied on information provided by the Health Care Unit Administrator ("HCUA") stating that Plaintiff was under the care of outside specialists who would address his medical issues (Doc. 1, pp. 53-54, 59, 66).  On April 8, 2024, Lively noted, per the HCUA, the specialist at Barnes/Washington University determined a thyroid biopsy was not needed (Doc. 1,

---

[2] At this stage, the Court accepts Plaintiff's allegation regarding the contractual relationship between SIH and Wexford as true.  A contract with Wexford (which contracts with IDOC to provide medical care to inmates) for SIH and its employees Jane Doe and John Doe to provide medical services to Plaintiff would allow these parties to be considered as "state actors" subject to suit under § 1983.  *See West v. Atkins*, 487 U.S. 42, 55-56 (1988).

p. 59). Lively responded on September 25, 2024, that per the HCUA, Plaintiff's GI specialist had determined no follow-up was needed for his thyroid and Plaintiff was scheduled for another GI specialist visit (Doc. 1, p. 66). Mitchell, Stephenson, and Bonnett approved the disposition of one or more of those grievances.

Grievance officials and those who sign off on grievance reports and appeals are ordinarily not liable in a civil rights action for failing to remedy the matters raised in the grievance. Rather, to be liable under § 1983, a defendant must be personally responsible for the violation of a constitutional right; review of a grievance does not amount to personal involvement. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021); *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). If a prisoner is under the care of prison medical professionals, a non-medical prison official "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). Plaintiff's documentation does not indicate that these grievance officials had sufficient awareness of the allegedly inadequate medical care to support a deliberate indifference claim against them. Accordingly, Saddler, Lively, Mitchell, Stephenson, and Bonnett will be dismissed from Counts 1 and 2.

**Count 3**

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted). In this case, Plaintiff alleges that he filed several grievances and complaints against Brown before telling her in May 2024 that he needed a thyroid biopsy in order to re-start his

Crohn's disease medication. Brown allegedly responded that she would not allow him to get medical treatment. Plaintiff was unable to get the care he sought, up to and including the date he filed this action, March 21, 2025. Given this chronology of events, Count 3 may proceed against Brown.

**Count 4**

Plaintiff invokes 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986 as the foundations for his civil conspiracy claim (Doc. 1, p. 31). Civil conspiracy claims are cognizable under § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002); *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). Here, Plaintiff alleges that his September 11, 2024 grievance put Wexford, SIH, Barwick, Hughes, Lively, and Bonnett on notice that Brown vowed in May 2024 to prevent him from getting any medical treatment. He also alleges that thereafter, these defendants took no steps to prevent Brown from making good on her promise. Plaintiff further claims that his October 12, 2024 grievance regarding untreated foot and back pain confirmed that Brown succeeded in preventing him from getting medical care, and the other defendants failed to stop Brown from violating his rights (Doc. 1, pp. 33, 70-72, 74).

Plaintiff's assertion that Wexford and SIH were put "on notice" of his complaints and of Brown's alleged misconduct through his prison grievances is implausible because his factual allegations fail to suggest that Wexford or SIH received copies of these grievances or of the prison officials' responses. The bare allegation that these entities conspired to deprive Plaintiff of his right to medical care, absent any indication that Wexford or SIH knew about these grievances, fails to state a viable claim. Wexford and SIH will therefore be dismissed from Count 4.

Barwick, Hughes, Lively, and Bonnett, who are IDOC employees, are the only remaining defendants in Plaintiff's conspiracy claim. Under the intracorporate conspiracy doctrine, a

9

conspiracy cannot exist solely between members of the same entity. This rule applies to claims brought under § 1985 and § 1986. *See Wright v. Illinois Dept. of Children & Family Services*, 40 F.3d 1492, 1508 (7th Cir. 1994); *Greene v. Teslik*, No. 21-2154, 2023 WL 2320767, at *4 (7th Cir. Mar. 2, 2023). Therefore, Count 4 will be dismissed in its entirety for failure to state a claim upon which relief may be granted.

### Injunctive Relief

Because the Complaint includes a request for injunctive relief, John Barwick, the current Warden of Pinckneyville Correctional Center, will remain as a defendant in his official capacity with regard to this request. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out).

### Official Capacity Claims

Plaintiff raises claims against each defendant in his or her individual and official capacities. As noted above, the injunctive relief claim is properly brought against the Pinckneyville Warden Barwick in his official capacity. However, Plaintiff's claims for monetary damages may only be pursued against state officials in their individual capacities. *Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Accordingly, the official capacity claims against the remaining individual defendants are dismissed without prejudice.

### Unknown/John/Jane Doe Defendants

Plaintiff is responsible for securing information aimed at identifying the Unknown John Doe and Jane Doe Defendants, in accordance with the John/Jane Doe Identification Order that will be entered separately. Once the names of the unknown defendants are obtained, Plaintiff must file a motion to substitute the newly identified defendants in place of the generic designations in the

case caption and throughout the Complaint. Pinckneyville Warden Barwick, in his official capacity, will be responsible for responding to Plaintiff's requests for information regarding the identity of the Unknown Defendants.

### Disposition

The Complaint states colorable claims in Counts 1 and 2 against Brown, Myers, Hughes, Crow, Barwick, Jane Doe, and John Doe; and in Count 3 against Brown. Count 4 and Defendants Lankford, Bonnett, Stephenson, Saddler, Mitchell, Lively, Wexford Health Sources, Inc., and Southern Illinois Health are **DISMISSED** without prejudice.

The Clerk shall prepare for Christine Brown, Percy Myers, Latoya Hughes, Christy Crow, and Warden John Barwick (in his official and individual capacity): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the

Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs.

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: April 30, 2025**

           *s/ Staci M. Yandle*
           **STACI M. YANDLE**
           **United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to

wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.